UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JoAnn Carr, | ) | C/A No. 5:11-2240-RBH-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Mike Reichenbach Ford Lincoln, Inc.; and | ) | |
| Mike Reichenbach, in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff JoAnn L. Carr ("Plaintiff" or "Carr") filed this action on August 23, 2011, against her former employer Mike Reichenbach Ford Lincoln, Inc. ECF No. 1. Plaintiff filed an Amended Complaint on March 1, 2012, in which she also asserted claims against Defendant Mike Reichenbach ("Reichenbach") in his individual capacity. ECF No. 26. Plaintiff's Amended Complaint alleges violations of the Americans with Disabilities Act ("ADA") of 1990, as amended, 42 U.S.C. 12101, *et seq.*, and interference with Plaintiff's rights under the Family and Medical Leave Act ("FMLA") of 1993, as amended. *Id.* On August 2, 2012, Defendants filed a Motion for Summary Judgment on both causes of action. ECF No. 41. On September 10, 2012, Plaintiff filed a response opposing Defendants' Motion for Summary Judgment, ECF No. 48, and Defendants filed a reply to Plaintiff's response on September 20, 2012, ECF No. 49. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Rule 73.02(B)(2)(g), D.S.C.[1] Because Defendants' Motion for Summary Judgment is dispositive, this report and recommendation is entered for the district judge's consideration.

---

[1] On January 1, 2012, the matter was reassigned from United States Magistrate Judge Shiva V. Hodges to the undersigned. ECF No. 19.

I.    Factual Background[2]

Between November 2008 and February 2009, Plaintiff communicated with individuals at Ford Motor Company regarding the controller position at the Reichenbach car dealership. Carr Dep. 84:4-12, ECF No. 41-2. During the time period relevant to the allegations in her Complaint Plaintiff lived on a farm in Pelion, South Carolina, which is approximately 90 to 100 miles from the Mike Reichenbach Ford Lincoln Dealership in Florence, South Carolina. *Id.* at 90:1-25. Plaintiff and Reichenbach discussed Plaintiff's potential commute during one of their interviews, and Plaintiff indicated that she could stay at a hotel during the work week, but that she eventually wanted to move to Florence.   *Id.*   Plaintiff's commute from her home to the dealership took between an hour and 45 minutes to two hours one way, depending on traffic. *Id.* In recounting his conversation with Plaintiff about her commute, Defendant Reichenbach recalled a similar conversation and noted that it was his understanding that Plaintiff would move closer to Florence within three months of being hired. M. Reichenbach Dep. 114:2-17, ECF No. 41-4.  There was no written document stating that Plaintiff was required to move to Florence as a condition of her employment. *See* Ex. 6 to Pl.'s Resp., ECF No. 48-6 at 92.

Plaintiff was hired as a controller for the dealership and began working on March 16, 2009. Am. Compl. ¶6, ECF No. 26. The duties of her position included "preparing the financial statement, collecting past due receivables and checks, reconciling statements, preparing and transmitting monthly sales tax, supervising employees in her department, and numerous other duties." Defs.' Mem. 2, ECF No. 41-3.  Plaintiff typically worked a four-day work week, and at

---

[2]As it must, the court considers the facts in the light most favorable to Plaintiff, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (noting in considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party).

least every other day, Plaintiff commuted from Pelion to the dealership. Carr Dep. 134:3-135:5, ECF No. 41-2.  On the days she did not return to Pelion, Plaintiff stayed in a Florence hotel.  *Id.* Plaintiff's work duties increased in July 2009 when Plaintiff assumed the human resources duties for the dealership and managed petty cash and payroll. *Id.* at 106-07.  Plaintiff's new duties included doing payroll, completing paperwork and setting up benefits for the new hires, and keeping track of employee vacation hours and vacation pay. *Id.* at 112:14- 113:9. During this same time period, Plaintiff discussed her fatigue and long commutes with Reichenbach. *Id.* at 130:18-23.

After Plaintiff assumed payroll duties in July 2009, on one occasion she failed to process the payroll on the usual pay date. As a result, employees did not receive their paychecks when expected. Carr Dep. 118:20-119:15, ECF No. 41-2.  Reichenbach was very upset and told Plaintiff that he could not have his employees "freaking out" over their paycheck, "[t]hey're going to walk out." *Id.* at 119:16-18.  In addition, during the summer of 2009, Plaintiff was counseled by Reichenbach when her department failed to pay off vehicles as required under their agreement with Ford Motor Credit, which resulted in the dealership being "out of trust." *Id.* at 118:3-14.  Reichenbach contends that Plaintiff's fatigue from her commute contributed to her making these mistakes. M. Reichenbach Dep. 144:11-25, ECF No. 41-4.

In August or September 2009, Plaintiff told Reichenbach that she wanted to move to Florence, but she needed to sell her Michigan home before she could move. Carr Dep. 140:11-17, ECF No. 41-2. Plaintiff explained that once she sold her Michigan home she planned to purchase a residence closer to Florence where she could move her animals before selling her Pelion home.  *Id.* at 141.   Around this time period Plaintiff's salary was increased by $500 per month, and Defendant started paying for Plaintiff's gas and hotel bills for the nights she stayed in

Florence.  *Id.* at 116:7-14.  Plaintiff indicates that Reichenbach praised her work and stated that she "had a job as long as [she] wanted one."  Carr Dep. 115:13-14, ECF No. 48-6.  Reichenbach contends that he increased Plaintiff's salary to improve her financial situation so that she could move closer to the dealership. M. Reichenbach Dep. 129:19-130:3, ECF No. 41-4.  From the end of August 2009 through Thanksgiving 2009, Plaintiff would tell Reichenbach "off and on" that she was tired. Carr Dep. 142:13-15, ECF No. 41-2.

In late September or early October 2009, Plaintiff and Reichenbach had a discussion about her faith and prayed together. *Id.* at 55:1-18. During this discussion, Plaintiff told Reichenbach that she was worried because she had swollen lymph nodes and that she had "been to the doctor, [and] it's not getting better." *Id.* at 56:2-5. Plaintiff contends that she and Reichenbach prayed about that as well. *Id.* at 56:8-11. In the months following that discussion Reichenbach would occasionally ask Plaintiff how she was feeling and how was it going. *Id.* at 59:9-14.  Plaintiff responded that she was "still going back and forth . . . for tests and everything [was] the same." *Id.* at 59:16-18. During that same time period, Plaintiff spoke with Reichenbach regarding the renovations to her Michigan home. She informed him that she was going to ask her sister to get a Lowes's charge card to finance the rest of the materials that she needed to renovate the house.  *Id.* at 147:1-12.

On the day before Thanksgiving in November 2009, Plaintiff spoke with Reichenbach on the telephone and told him she was not at the dealership because she was returning from a test at the hospital.  Carr Dep. 62:12-63:1, ECF No. 41-2.  When Reichenbach asked Plaintiff about the test, Plaintiff responded that it did not look good. *Id.* at 63:2-4. Reichenbach did not inquire further, and the conversation ended shortly thereafter. *Id.* at 64:5-8.  When Reichenbach returned from the Thanksgiving holiday, he contends that Plaintiff told him that her sister was not going

to loan Plaintiff the money she needed to renovate her Michigan home. M. Reichenbach Dep. 164:5-24, ECF No. 41-4. Reichenbach avers that he asked Plaintiff what she planned to do to be able to move and she responded that she had "no solution, her sister was her last solution." *Id.* Reichenbach contends that at that time he told Plaintiff that he was going to hire someone else for her position, and that she needed to find something closer to home. M. Reichenbach Dep. 167-68, ECF No. 41-4; *see* Carr Dep. 151:20-152:1, ECF No. 41-2. Plaintiff states that Reichenbach went on to say "besides that, you got all these things going on with your health. . . . What if you're terminal." Carr Dep. 152:2-3, ECF No. 41-2.  Plaintiff also contends that Reichenbach stated, "You know, you might have to be off a long time.  Your position is too important to not have you here all the time." Carr Dep. 190:6-9, ECF No. 48-6.  Plaintiff states that Reichenbach told her he would try to help her find a job and that he would keep her on as an employee until he hired a replacement.  Carr Dep. 152:7-13, ECF No. 41-2. Reichenbach further agreed to pay Plaintiff one-month's severance if she agreed to train her replacement.  *Id.* at 153:1-4.

During a manager's meeting a few weeks later, Reichenbach announced that Plaintiff was leaving the dealership to work closer to home. Carr Dep. 156:20-23, ECF No. 41-2.  After this meeting, Plaintiff told Terry Kennedy, the parts manager, that she was leaving because she was sick. Carr Dep. 157:21-22, ECF No. 48-6.  Plaintiff helped find her replacement, Pearl Wallace, who was hired in late December 2009 or early January 2010. Wallace Dep. 25-28, ECF No. 48-11. One day in early January 2010, after Plaintiff was out for a doctor's appointment, Reichenbach left Plaintiff a voicemail message stating that because he had not heard from her, he presumed that it was not good news. Voicemail Tr. 4, ECF No. 48-1.  Reichenbach went on to state that if the news was bad that he and his wife would "do everything we can to help,"

including providing healthcare coverage.  *Id.* He concluded his message by telling Plaintiff to call him if she wanted to talk. *Id.* On January 14, 2010, Reichenbach wrote a letter of recommendation for Plaintiff.  Ltr., ECF No. 48-9 at 80.  Plaintiff spent the month of January training and integrating Ms. Wallace into the dealership. Carr Dep. 172:18-173:5, ECF No. 41-2.

On February 3, 2010, Plaintiff was diagnosed with thyroid cancer. Carr Dep. 185:20-23, ECF No. 41-2. Plaintiff's last day of work was February 12, 2010; however, as agreed, Plaintiff was paid through March 9, 2010, as severance. *Id.* at 174:22-175:19. Plaintiff had surgery on March 8, 2010, to remove her thyroid and portions of the lymph nodes in her neck.  *Id.* at 64:24-65:13. Plaintiff's surgery was covered by her insurance through the dealership.  *Id.* at 65:22-24. Plaintiff was discharged from the hospital on the same day as her surgery, and she testified that she would have missed only two days of work if she had still been employed. *Id.* at 66:19-67:20. Plaintiff did not request leave under the FMLA, nor did she take any time off due to her medical condition.  *Id.* at 202:15-17; 203:1-3.

II.     Discussion

A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

6

those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *See Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson,* 477 U.S. at 255.  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.  Analysis

1.  Plaintiff's Disability-Discrimination Claim

Plaintiff's ADA claim is based on her allegation that she was discriminated against on the basis of a perceived disability when she was terminated by Defendants. Plaintiff indicates that she is pursuing her claims against Defendants under "a 'regarded as' theory of liability under 42 U.S.C. § 12112."[3]  Pl.'s Resp. 9, n.1, ECF No. 48.  An individual is "regarded as being disabled" if he is regarded or perceived, albeit erroneously, as having an impairment that substantially limits one or more of his major life activities. 42 U.S.C. § 12102(1)(c) and § 12102(3)(A) ("An

---

[3] Under 42 U.S.C. § 12112(a), the ADA's "[g]eneral rule" against discrimination provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."). "Proof limited to mere speculation and inferences that an employer believes an employee to be disabled is insufficient to avoid summary judgment." *Csicsmann v. Sallada*, 211 F. App'x 163, 167 (4th Cir. 2006) (citing *Haulbrook*, 252 F.3d at 704).

The Fourth Circuit has held that the causation and burden-shifting standards applicable in Title VII cases as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), are also applicable in cases brought pursuant to the ADA "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action." *Ennis v. Nat'l Assoc. of Bus. and Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995). Under the analysis set forth in *McDonnell Douglas*, Plaintiff has the initial burden of demonstrating a prima facie case of discrimination. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for Plaintiff's discharge. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. *Id.*

Defendants assert they are entitled to judgment as a matter of law on Plaintiff's "regarded as" claim because she is unable to provide evidence of discrimination under the ADA. Defs.'

Mem. 10, ECF No. 41-1. Plaintiff alleges that Defendants violated the ADA when Defendant Reichenbach "assumed the inevitability of [Plaintiff's cancer] diagnosis after receiving news of [Plaintiff's] symptoms and treatment in Fall of 2009." Pl.'s Resp. 1, ECF No. 48. Plaintiff argues that Defendant Reichenbach "believed that [she] had an illness that would create a hardship for his dealership and preemptively terminated [her] employment." *Id.*

Plaintiff has provided no evidence that Defendants regarded her as disabled. As explained by the Fourth Circuit, "[t]he fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.'" *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 703 (4th Cir. 2001) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)). Plaintiff has not established anything more than that Reichenbach was aware she had swollen lymph nodes and was undergoing tests. Plaintiff's diagnosis of thyroid cancer was not made until after the decision was made to end her employment.

To establish a prima facie case of discriminatory discharge based on disability using indirect evidence, Plaintiff is required to prove by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances giving rise to an inference of unlawful discrimination. *See Ennis,* 53 F.3d at 58 (applying *McDonnell Douglas* to an ADA claim). For the purposes of their Motion, Defendants concede that Plaintiff is able to establish the first two elements of a prima facie case of discrimination. Defs.' Mem. 16, n.9, ECF No. 41-1. Accordingly, the court will consider only the remaining two elements.

      a.   Third Element of Prima Facie ADA Claim: Legitimate Expectations of Employer

Defendants argue that Plaintiff cannot establish a prima facie case for disability discrimination because, at the time of her termination, she was not performing at an acceptable level and had not complied with the expectation that she move closer to the dealership.

Plaintiff contends that the evidence in the record shows that she was meeting the legitimate performance expectations of Defendants. Plaintiff argues that Reichenbach's January 14, 2010, letter of recommendation confirms that Plaintiff was "not only meeting but exceeding" Defendants' performance expectations at the time she was informed of her impending termination.  Pl.'s Resp. 9, ECF No. 48.  Plaintiff further argues that in addition to the January 2010 letter, there is additional evidence in the record that demonstrate she was doing a "good job." *Id.* at 10. Plaintiff points out that her personnel file contains no performance warnings or negative information and there is no written documentation suggesting she was not fulfilling the requirements of her job.  *Id.* Plaintiff also contends that in August 2009 she received a 9% pay raise, additional job perks including gas reimbursement, and in October 2009 Reichenbach complimented her for her work in getting the dealership's license reinstated.  *Id.* at 11.  Plaintiff argues that Defendants, in response to Plaintiff's charge of discrimination to the South Carolina Human Affairs Commission ("SCHAC"), did not focus on specific performance shortcomings as the reason for her termination. *Id.* Plaintiff contends that Defendants cited to Plaintiff's failure to relocate to Florence as the reason for her termination. *Id.*

Assuming Plaintiff was performing the functions of her job satisfactorily, Defendants still assert that she did not fulfill their expectation that she to move closer to Florence.  Defs.' Mem. 16, ECF No. 41-1.  Plaintiff disputes this claim and argues that it was never a condition of her employment, written or otherwise, that she move to Florence, and that her failure to move was

not provided as a reason for her termination. Pl.'s Resp. 11, ECF No. 48.  Plaintiff further argues that other employees "spent each week in Florence and commuted home on the weekends and were not required to move," and that her replacement has a daily commute of "about one hour and fifteen minutes each way." *Id.* at 12.   Plaintiff also contends that when she was "informed that she was being replaced both Mr. Reichenbach and her replacement identified potential employment opportunities for her in Florence and as far away as Tampa, Florida," which suggests that Reichenbach did not really believe that Plaintiff "lived too far away from his dealership to do a good job." *Id.*

In response to these arguments, Defendants contend that it is immaterial whether Plaintiff's moving to Florence was a condition of her employment because the evidence in the record clearly shows that relocation closer to Florence was Defendants' legitimate expectation of Plaintiff for her employment at the dealership.  Defs.' Reply 3, ECF No. 49. Defendants argue that Plaintiff never moved to Florence and, therefore, she was not "meeting Defendants' legitimate expectations, and cannot establish a prima facie case of disability." *Id.*  Defendants also contend that Plaintiff's contentions regarding the commutes of other employees are not a legitimate comparison because Plaintiff "never stayed more than two nights during any given week, and thus cannot be properly compared to employees who spent the entire week in Florence and then commuted home on the weekends." *Id.* at 4.  Defendants further argue that although Plaintiff's replacement commutes daily to Florence, Plaintiff's commute was twice as long as her replacement's commute. *Id.*  Defendants finally argue that Reichenbach's efforts to help Plaintiff find other jobs that had a similar or longer commute does not establish that Reichenbach was not concerned about Plaintiff's commute to his dealership.  *Id.* at 6.

The undersigned has reviewed the evidence before the court and finds that the evidence supports Defendant Reichenbach's assertion that he legitimately expected Plaintiff to relocate closer to Florence and that Plaintiff did not meet this expectation. Plaintiff's argument concerning the lack of written documentation to support that her relocation to Florence was a condition of her employment does not cancel out the evidence in the record that Plaintiff informed Reichenbach that she planned to move to Florence, and that Reichenbach legitimately expected Plaintiff to move. Further, the record establishes that Reichenbach told Plaintiff, when she was informed of her pending termination, that she needed to find a job closer to home. Carr Dep. 151:25-152:1, ECF No. 41-2; M. Reichenbach Dep. 167:23-25; 168:1-4, ECF No. 41-4. Regarding the other employees at the dealership who commuted, the evidence shows that these employees did not commute daily, but instead worked in Florence during the week and sometimes commuted on the weekend. Carr Dep. 131:9-17, ECF No. 49-1. Also, it is undisputed that Plaintiff's replacement's commute was not as long as Plaintiff's commute, with Ms. Wallace's commute being "an hour, a little over an hour," Carr Dep. 160:12-14, ECF No. 41-2, and Plaintiff's commute being "between an hour and forty-five minutes to two hours." *Id.* at 90:19-20. Finally, the fact that Plaintiff received job leads that had commutes equal to or greater to her commute to Defendants' dealership does not, by itself, cast doubt on Reichenbach's argument that Plaintiff "lived too far away from his dealership to do a good job."

"It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996); *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (quoting *Evans*). The undersigned finds that it is undisputed that during one of Plaintiff's job interviews Reichenbach discussed Plaintiff's commute with her, and that Plaintiff indicated that she eventually wanted to move to Florence.

Carr Dep. 90:1-8, ECF No. 41-2. The undersigned finds that during the summer of 2009, the parties discussed Plaintiff's move to Florence. *Id.* at 131:19-25. Plaintiff again told Reichenbach that she wanted to move to Florence but that she needed to sell her Michigan home first. *Id.* Plaintiff told Reichenbach that the Michigan house needed renovation before it could be sold. *Id.* Plaintiff testified that she was looking at real estate in Florence and inquired about one property that sold before she had an opportunity to make an offer. *Id.* at 140.  The undersigned further finds that in late September, early October 2009, that Plaintiff updated Reichenbach regarding the renovations to her Michigan home and the plans that she had to fund the renovation. *Id.* at 147-48. Finally, the record shows that Plaintiff was unable to acquire the funds that she needed to complete the Michigan home renovation. *Id.* at 149:5-7.  It is undisputed that Plaintiff had not moved closer to Florence at the time Defendant Reichenbach informed Plaintiff that she was being discharged.  Accordingly, the undersigned finds that Plaintiff is unable to establish that she was meeting the legitimate expectations of her employment concerning her relocation to Florence.

b.  Fourth Element of Prima Facie ADA Claim: Circumstances Raising an
Inference of Discrimination

In the event the district court determines Plaintiff has satisfied the third element of her prima facie ADA claim, the undersigned also considers the fourth element of the prima facie claim: whether her discharge occurred under circumstances that raise a reasonable inference of discrimination. Plaintiff asserts she has presented evidence sufficient to satisfy this element. Pl.'s Resp. 12, ECF No. 48. Plaintiff argues that she never received a performance warning or document in her personnel file that suggested "her employment was substandard or in jeopardy." *Id.* at 13.  Plaintiff also argues that Reichenbach never told her she had to move to Florence to keep her job, and that she received a pay increase plus benefits in August 2009 for doing a "good

job." *Id.* Plaintiff argues that she told Reichenbach about her swollen lymph nodes and thyroid condition in late October or early November 2009, and that following this disclosure Reichenbach continued to ask about her health status until the day before Thanksgiving when she advised him that she had been to the doctor and "it didn't look good." *Id.* at 13-14. Plaintiff contends upon her return to the dealership after Thanksgiving that Reichenbach told her she might be "terminal," that her position was too important for her to miss work, and that his friend suggested that Reichenbach should "walk her to the door right then and there." *Id.* at 14. Plaintiff further argues that Reichenbach's January 2010 voicemail demonstrates his "focus on [Plaintiff's] health, its presumed effect on his operations, and his perception that she was disabled." *Id.*

In response, Defendants cite to *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 197 (4th Cir. 1997), and argue that in order to show that she was discharged under circumstances that give rise to an inference of discrimination, Plaintiff must demonstrate that she was discharged "solely because of her disability," and that Plaintiff has failed to meet this criterion. Defs.' Reply 6, ECF No. 49. As an initial matter, in *Baird v. Rose*, 192 F.3d 462, 469 (4th Cir. 1999), the Fourth Circuit held that the ADA does not impose a "solely because of" standard of causation. Accordingly, Plaintiff need not establish that her disability was the sole reason for her discharge. Defendants contend that Reichenbach and Plaintiff had repeated conversations about Plaintiff's relocation and that Plaintiff always provided excuses as to why she could not move. Defs.' Reply 7. They submit that, after Thanksgiving, when it became clear that Plaintiff would not relocate, Reichenbach told Plaintiff he was letting her go. *Id.* Defendants argue that Plaintiff's own admission establishes that the first thing Reichenbach told her during this conversation was that she "need[ed] to get something closer to home." *Id.* Defendants further argue that Plaintiff's

14

attempt to show that Reichenbach constantly worried about her health after she told him about her swollen lymph nodes is inconsistent with Plaintiff's deposition testimony in which Plaintiff testified that Reichenbach would "occasionally" ask her how she was feeling. *Id.* at 7. Defendants also contend that Plaintiff exaggerates that nature of the January 2010 voicemail message, arguing that the message "reveals an individual who is sincerely concerned about Plaintiff's health and who wants to do whatever he can to help her." *Id.* Defendants argue that this voicemail message was left over a month after Reichenbach told Plaintiff she was being let go and is not credible evidence of the reason Plaintiff was terminated. *Id.* at 8.

Considering the evidence and any reasonable inferences to be drawn from that evidence in the light most favorable to Plaintiff, as the court is constrained to do, the undersigned finds that for purposes of this Motion, Plaintiff has introduced sufficient evidence to give rise to a genuine issue of fact as to whether her discharge occurred under circumstances giving rise to an inference of unlawful discrimination. In reaching this determination, the court notes the following facts:

- Plaintiff had not relocated closer to Florence despite at least three discussions with Reichenbach concerning her moving closer to Florence.

- At the end of August 2009, Plaintiff received a raise and was compensated for her gas and hotel expenditures. Carr Dep. 116:10-15, ECF No. 48-6; M. Reichenbach Dep. 129:19-130:6, ECF No. 41-4.

- In late September or early October 2009, Plaintiff informed Reichenbach that she had swollen lymph nodes that were not getting better. Carr Dep. 56:3-5; 57:12-15, ECF No. 48-6.

- The day before Thanksgiving 2009, Plaintiff informed Reichenbach that she had a medical test and that it did not look good. Carr Dep. 62:12-14; 63:2-4, ECF No. 41-2.

- Reichenbach would occasionally ask Plaintiff how she was feeling. Carr Dep. 59:12-14, ECF No. 41-2.

- Plaintiff was told that she was being let go because she needed to find a job closer to home. During this conversation, Reichenbach allegedly also

asked Plaintiff "[w]hat if you're terminal?" and stated that her position was too important for her to miss work.  Carr Dep. 152:1-3, ECF No. 41-2; Carr Dep. 190:6-9, ECF No. 48-6.

Although Plaintiff can meet the fourth prong of the prima facie framework, as discussed above, Plaintiff fails on the third prong because she has not established that she met Defendants' legitimate expectations. Accordingly, summary judgment is appropriate because Plaintiff has failed to prove the elements necessary to establish a prima facie case of discriminatory discharge under the ADA. Assuming, *arguendo*, that Plaintiff could make a prima facie case of discrimination, the undersigned finds summary judgment appropriate because Defendants have articulated a legitimate reason for their action and Plaintiff cannot establish that Defendants' proffered reason was merely a pretext for discrimination.

### c.  Legitimate, Non-Discriminatory Reason for Plaintiff's Termination

The evidence before the court reflects that Defendants set forth a legitimate, non-discriminatory reason for the action taken. Defendants submitted evidence to show that Plaintiff indicated during her initial interview that she planned to move closer to Florence, and Plaintiff and Reichenbach had numerous discussions regarding the status of her move. *See* Carr Dep. 90:1-9; 131:19-134:1; 147:12, ECF No. 41-2. Reichenbach gave Plaintiff a raise, and paid for her hotel and gas to help improve Plaintiff's financial situation so she could move closer. Reichenbach Dep. 165:3-12, ECF No. 41-4.  Defendants submitted evidence that between July 2009 and November 2009, Defendants reimbursed Plaintiff approximately $2,800 for her hotel and gas. ECF No. 41-3. Defendants' evidence reflects that in November 2009, Plaintiff had no plans to relocate to Florence, and Reichenbach informed Plaintiff that she needed to find a job closer to her home. Carr Dep. 151:20-152:1, ECF No. 41-2; Reichenbach Dep. 167:9-168:4, ECF No. 41-4. The evidence is sufficient to establish a legitimate, non-discriminatory reason for

Defendants' actions. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1991) (finding that defendant's burden of establishing a legitimate, non-discriminatory reason "is simply a burden of production not of persuasion."). Thus, the burden shifts back to Plaintiff to prove that Defendants' reason is a mere pretext to hide a discriminatory motive.

d.   Pretext

To overcome Defendants' legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff must offer sufficient evidence to create a genuine issue of material fact that shows that the defendant's reason for her discharge is not true, but is instead a pretext for discrimination. *Reeves*, 530 U.S. at 143. A plaintiff can demonstrate pretext by showing that the "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [illegal] discrimination." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (citation omitted) (ADEA claim).

Plaintiff argues that Defendants' reason for her discharge is a pretext because Defendants, in their position statement to SCHAC initially stated that Plaintiff's relocation was a "condition of her employment," but now argue that Plaintiff's relocation was a "reasonable expectation" of Defendants. Pl.'s Resp. 18, ECF No. 48. Plaintiff further contends that Defendants' reason was pretextual because her relocation to Florence was not documented in writing, was never a job requirement or a condition of her continued employment, and other similarly-situated employees lived in other states or had long commutes and were not terminated. *Id.* Plaintiff finally argues that she was being referred to job vacancies in Florence and even farther away from her home which directly contradicts Reichenbach's "message to employees that [Plaintiff] was leaving for a job closer to home." *Id.* Defendants contend that whether couched as a "condition of employment" or an "expectation," that Plaintiff's own deposition

17

testimony shows that Plaintiff told Reichenbach that she planned to relocate closer to Florence. Defs.' Reply 9, ECF No. 49. Defendants contend that the evidence in the record shows that Reichenbach legitimately expected Plaintiff to move closer to Florence and she failed to do so. *Id.*

The undersigned finds that although Reichenbach's position regarding Plaintiff's relocation as a "condition" or "expectation" may have changed, the reason Reichenbach gave for Plaintiff's discharge—failure to relocate—was not inconsistent and therefore cannot be used to establish pretext. *See Anderson v. Roche Carolina, Inc.,* No. 4:10-2792-RBH, 2012 WL 368710, at *7 (D.S.C. Feb. 3, 2012) ("When the reasons given by an employer change over time but are not inconsistent, pretext has not been shown."); *Hunnicutt v. S.C. Dept. of Revenue*, No. 3:08-2589-JFA, 2010 WL 1344352, at *8 (D.S.C. Mar. 31, 2010) (noting that the "Fourth Circuit has held that inconsistent explanations of employment actions are probative of pretext, but that different or varying explanations that are not materially inconsistent are not.").

Addressing Plaintiff's argument concerning the commute of other employees, the undersigned finds that this evidence is inadequate to establish pretext. When a plaintiff bases her discrimination claim on a similarly situated comparator, it is the plaintiff's "task to demonstrate that the comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010). "Plaintiff [is] required to show that they are similar in all relevant respects to their comparator. Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (internal citations omitted); *see also Anderson v. Roche Carolina, Inc.*, 2012 WL 368710. The evidence before the court shows that no other employee,

including Plaintiff's replacement, had a daily commute as long as Plaintiff's commute. Carr Dep. 90:13-20, ECF No. 41-2. In fact, the employees Plaintiff references who were at the dealership when her termination decision was made stayed in Florence during the week, and only commuted home on the weekends. Carr Dep. 131:9-18, ECF No. 49-1. Additionally, Plaintiff's argument concerning the job leads that she received following Reichenbach's discharge decision does not establish pretext. The fact that Plaintiff was referred to jobs with a commute equivalent to or longer than her commute to Defendants' dealership is insufficient to establish that Defendants' reason for Plaintiff's termination—that Plaintiff needed to relocate closer to the dealership—was pretextual. Therefore, the undersigned recommends that Defendants' Motion for Summary Judgment as to Plaintiff's ADA claim of disparate treatment be granted.

2.    Plaintiff's Mixed-Motive-Theory Claim

To pursue a mixed-motive case, a plaintiff must demonstrate that a protected trait "actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Worden v. SunTrust Banks, Inc.* 549 F.3d 334, 342, n.7 (4th Cir. 2008) (internal citation omitted) (applying mixed-motive analysis in employment discrimination claim brought under the Employee Polygraph Protection Act, 29 U.S.C. §§ 2001-2009). In her memorandum in opposition to summary judgment, Plaintiff argues that, regardless of the *McDonnell Douglas* analysis, the evidence is sufficient for a reasonable jury to find that Plaintiff was terminated because Defendants regarded her as disabled. Pl.'s Resp. 21-22, ECF No. 48.

Plaintiff cites to her discussion with Reichenbach about her health concerns, Reichenbach's follow-up inquiries, Reichenbach's comments about a sick employee, and Reichenbach's alleged comments about Plaintiff being terminal and possibly missing a lot of work. Plaintiff argues that this evidence, taken together, provides sufficient evidence to establish

that Plaintiff was terminated because Defendants regarded her as disabled.  Pl.'s Resp. 20-21, ECF No. 48.

Defendants first argue that "recent case law and the amendments to the Americans with Disabilities Act Amendments Act foreclose a 'mixed motive' theory of liability for ADA 'regarded as' claims like Plaintiff's." Defs.' Reply 10, ECF No. 49.  In *Baird*, 192 F.3d at 470, the Fourth Circuit held that causation standards applicable in Title VII actions were applicable to violation of the ADA.  However, in 2009, the Supreme Court held that the burden-shifting framework of a mixed-motive analysis under Title VII did not apply to ADEA claims. *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 174 (2009) (finding that, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.").  In *Gross*, the Court found that it could not "ignore Congress' decision to amend Title VII's relevant provisions and not make similar changes to the ADEA. When Congress amends one statutory provision but not another, it is presumed to have acted intentionally." *Id.*  Similarly, Congress did not amend the text of the ADA to include the "motivating factor" approach.  Defendants argue that after the Court's decision in *Gross*, and after implementation of the amendments to the ADA, "a mixed-motive analysis based on a finding that a disability was a 'motivating factor' in the decision to terminate in no longer appropriate." Defs. Reply 12, ECF No. 49.

Alternatively, Defendants assert that even if the court applied a mixed-motive analysis, Plaintiff failed to establish that her perceived disability had a determinative influence on Defendants' decision to terminate her employment. *Id.* at 12. Defendants contend that Reichenbach told Plaintiff that he was letting her go because she needed to find something closer to home, and that the only factors motivating Reichenbach's decision were Plaintiff's failure to

move closer to Florence, Plaintiff's performance issues, and the cost to the dealership that flowed from her failure to relocate.  Defs.' Reply 13, ECF No. 49.

The Fourth Circuit has yet to revisit *Baird* following the Court's decision in *Gross*.  Other circuits have concluded the mixed-motive standard of Title VII does not apply to ADA claims. *See Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 318 (6th Cir. 2012); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010).  Regardless of the applicability of *Baird*, viewing the evidence in the light most favorable to Plaintiff, the undersigned finds that Plaintiff has not presented sufficient evidence to create a genuine issue of material fact that Defendants' decision to terminate her was motivated by her perceived disability as opposed to the nondiscriminatory reason that Plaintiff failed to relocate closer to Florence. Therefore, Plaintiff's ADA claim cannot go forward on the basis of a mixed-motive analysis. It is therefore recommended that Defendants' Motion for Summary Judgment be granted on this ground.

### 3.    Plaintiff's FMLA Claim

"The FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Gleaton v. Monumental Life Ins. Co.*, 719 F. Supp. 2d 623, 633 n.3 (D.S.C. 2010) (internal citation omitted).  Plaintiff contends she was terminated shortly before she would have been eligible for protected leave under FMLA and this termination constituted interference with her rights under the FMLA or retaliation for exercising her rights to take medical leave to care for her own serious health condition. Pl.'s Resp. 6-7, ECF No. 26.

a.    Interference Claim

"To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: (1) he was an eligible employee, (2) his employer was covered by the Act, (3) he was entitled to leave under the FMLA, (4) he gave his employer adequate notice of his intention to take leave, and (5) the employer denied him FMLA benefits to which he was entitled." *King v. Blanchard Mach. Co.*, No. 3:10-3219-MBS, 2012 WL 4586177, at *5 (D.S.C. Sept. 28, 2012). To be eligible for leave under the FMLA, an employee must have been employed "for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(i). Plaintiff began working for Defendants on March 16, 2009, and her last day of work was February 12, 2010. Am. Compl. ¶¶ 6, 19, ECF No. 26.

Defendants argue that Plaintiff was not an "eligible employee" under the FMLA because she was employed for fewer than 12 months. Defs.' Mem. 26, ECF No. 41-1. Defendants further argue that Plaintiff never requested FMLA leave, nor did she attempt to exercise her rights protected by FMLA. *Id.* at 28-29. Additionally, Defendants argue that Plaintiff admits that any leave she would have taken related to her cancer diagnosis would have been before she was eligible for FMLA leave. *Id.* at 29-30. Plaintiff disputes that Defendants are entitled to summary judgment arguing that that an employer's preemptive termination of an employee to prevent her from qualifying for FMLA leave constitutes prohibited interference or retaliation under FMLA. Pl.'s Resp. 22, ECF No. 48.

The undersigned finds that Plaintiff is not able to meet all the elements of an FMLA interference claim. It is undisputed that Plaintiff had not worked for Defendants for 12 months at the time of her termination. Further the evidence in the record establishes that Plaintiff was not entitled to leave under the FMLA, that Plaintiff did not provide her employer with any notice of

her intention to take FMLA leave, and that Defendants did not deny Plaintiff FMLA benefits to which she was entitled.

b.      Retaliation Claim

To establish a prima facie case of retaliation under the FMLA, Plaintiff must show: (1) she made use of a protected right under the FMLA, (2) she was adversely affected by an employment decision, and (3) that there is a causal connection between Plaintiff's protected activity and the employer's adverse employment action. *See, e.g., Perry v. Computer Sciences Corp.,* 429 F. App'x 218, 220 (4th Cir. 2011).

Defendants contend that Plaintiff's retaliation claim fails as a matter of law because she never engaged in any protected activity in that she never requested FMLA leave, never took FMLA leave, and never did anything else that would be protected by the FMLA. Defs.' Mem. 30, ECF No. 41-1.  The evidence in the record precludes a finding that Defendants acted adversely towards Plaintiff in retaliation for efforts to take leave under the FMLA. Defendants are therefore entitled to summary judgment on Plaintiff's FMLA claim.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 41, be GRANTED.

IT IS SO RECOMMENDED.

February 6, 2013                                    Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**