IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JoAnn L. Carr, | ) | Civil Action No.: 4:11-cv-02240-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Mike Reichenbach Ford Lincoln, Inc.; and | ) | |
| Mike Reichenbach, in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

   Plaintiff JoAnn L. Carr ("Plaintiff") filed the above action against her former employer Mike Reichenbach Ford Lincoln, Inc. ("Reichenbach Ford"), and Mike Reichenbach ("Mr. Reichenbach") in his individual capacity (collectively, "Defendants"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12101–12213 (Westlaw 2013), and violations under the Family and Medical Leave Act ("FMLA") of 1993, 29 U.S.C. §§ 2601–2654 (Westlaw 2013).

   On August 2, 2012, Defendants filed a Motion for Summary Judgment on all counts, along with a memorandum in support. Plaintiff filed her Response on September 10, 2012, to which Defendants filed a Reply.

   This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Kaymani D. West.[1] In the R&R, the magistrate recommends that the Court grant Defendants' Motion for Summary Judgment. Plaintiff timely filed Objections to the R&R on March 1, 2013, to which Defendants filed a Reply.

   For the following reasons, this Court rejects the R&R in part, and adopts the R&R in part

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge West for pretrial handling.

as modified herein. Specifically, the Court rejects and overrules the magistrate's R&R as to Plaintiff's ADA claim, and adopts the magistrate's R&R as to Plaintiff's FMLA claims as modified herein.

## **Background**[2]

Plaintiff was hired by Mr. Reichenbach as a controller for Reichenbach Ford, and began working on March 16, 2009. Plaintiff's commute from her home to the dealership took between an hour and 45 minutes to two hours one way, depending on traffic. Although the parties had discussed Plaintiff moving closer to Florence within three months of her starting work, there was no written document stating that Plaintiff was required to move to Florence as a condition of her employment.

Plaintiff's work duties increased in July 2009 when Plaintiff assumed the human resources duties for the dealership and managed petty cash and payroll. At this point, she had still not relocated to Florence. In August or September 2009, Plaintiff told Mr. Reichenbach that she wanted to move to Florence, but she needed to sell her Michigan home before she could move. Around this time period Plaintiff's salary was increased by $500 per month, and Defendants started paying for Plaintiff's gas and hotel bills for the nights she stayed in Florence. Plaintiff indicates that Mr. Reichenbach praised her work, while Mr. Reichenbach contends that he increased Plaintiff's salary to improve her financial situation so that she could move closer to the dealership.

In late September or early October 2009, Plaintiff told Reichenbach that she was worried because she had swollen lymph nodes, had been to the doctor, and was not getting better. In the months following that discussion Mr. Reichenbach would occasionally ask Plaintiff about her health.

---

[2] The facts of this case, including citations to the record, are discussed more thoroughly in the magistrate's R&R. [*See* R&R, Doc. # 54, at 1–6.]

During that same time period, Plaintiff spoke with Mr. Reichenbach about her Michigan home, which she was renovating in an effort to be able to sell the home.

On the day before Thanksgiving in November 2009, Plaintiff spoke with Mr. Reichenbach on the telephone and told him she was not at the dealership because she was returning from a test at the hospital. When Mr. Reichenbach asked Plaintiff about the test, Plaintiff responded that it did not look good. When Mr. Reichenbach returned from the Thanksgiving holiday, he contends that Plaintiff told him that due to unforseen financial problems Plaintiff would be unable to renovate her Michigan home and had "no solution" regarding when she would be able to move.

Mr. Reichenbach contends that at that time he told Plaintiff that he was going to hire someone else for Plaintiff's position, and that Plaintiff needed to find something closer to home. Plaintiff states that Mr. Reichenbach went on to say "besides that, you got all these things going on with your health. What if you're terminal?" Plaintiff also contends that Mr. Reichenbach stated, "You know, you might have to be off a long time. Your position is too important to not have you here all the time." Plaintiff states that Mr. Reichenbach told her he would try to help her find a job and that he would keep her on as an employee until he hired a replacement. Mr. Reichenbach further agreed to pay Plaintiff one month's severance if she agreed to train her replacement.

Plaintiff ultimately helped find her replacement, who was hired in late December 2009 or early January 2010. On January 14, 2010, Mr. Reichenbach wrote a letter of recommendation for Plaintiff. Plaintiff spent the month of January training and integrating her replacement into the dealership.

On February 3, 2010, Plaintiff was diagnosed with thyroid cancer. Plaintiff's last day of work was February 12, 2010; however, as agreed, Plaintiff was paid through March 9, 2010, as severance.

Defendants further extended Plaintiff's insurance so that her subsequent cancer surgery was covered. Plaintiff was discharged from the hospital on the same day as her surgery, and she testified that she would have missed only two days of work if she had still been employed. Plaintiff did not request leave under the FMLA, nor did she take any time off due to her medical condition.

## **Standard of Review**

The magistrate judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the magistrate judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("*[D]e novo* review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendation."). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins*. Co., 416 F.3d 310 (4th Cir.2005). Furthermore, in the absence of specific objections to the R&R, this Court is not required to give any explanation for adopting the recommendation. *See Diamond*, 416 F.3d at 315; *Camby*

*v. Davis*, 718 F.2d 198 (4th Cir. 1983).

## Discussion

Plaintiff objects to the magistrate's findings relating to both her ADA and FMLA claims.

**I.    ADA**

Plaintiff's ADA claim[3] is that she was discriminated against on the basis of her health issues when she was terminated by Defendants. An ADA plaintiff may generally "avert summary judgment . . . through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc*., 354 F.3d 277, 284 (4th Cir. 2004)); *see also Wright v. Stark Truss Co., Inc*., No. 2:10–2427, 2012 WL 3029638, at *5 (D.S.C. May 10, 2012) (explaining that disparate treatment claims under the ADA are evaluated under the same standards as discrimination claims asserted under Title VII). First, a plaintiff may present direct or circumstantial evidence that raises a genuine issue of material fact as to whether an employer discriminated against the plaintiff as a result of her disability. *See Diamond*, 416 F.3d at 318; *Eckhardt v. Bank of Am., N.A.*, No. 3:06cv512, 2008 WL 5100843, at *12–17 (W.D.N.C. Nov.2 6, 2008) (analyzing summary judgment on ADA claim through, among other means, direct evidence of discrimination).

Alternatively, a plaintiff without direct evidence of discrimination may "proceed under [the *McDonnell Douglas*] 'pretext' framework, under which the employee, after establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for

---

[3]  The ADA provides three avenues for establishing the existence of a disability: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). As the magistrate explained, Plaintiff is pursuing her ADA claims against Defendants under a "regarded as" theory of liability. [*See* R&R, Doc. # 54, at 7.] Plaintiff does not object to this finding.

5

taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Labor v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (applying the *McDonnell Douglas* framework to an ADA claim).

Plaintiff objects to the magistrate's finding that she cannot succeed under either theory. The Court will begin, as the magistrate and Plaintiff did, with Plaintiff's pretext arguments.

**A.     Pretext**

To establish a *prima facie* case for wrongful discharge on the basis of the ADA, a plaintiff must prove four elements: (1) she is within the ADA's protected class – that is, that she was a "qualified individual with a disability;" (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Day v. Morgan*, No. 3:10–cv–454, 2011 WL 3418521, at *4 n.1 (D.S.C. Aug. 3. 2011) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once a defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination vel non." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). In other words, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the defendant is not its true reason, but was a pretext for discrimination. *Id.*

The magistrate held that Plaintiff failed to show the third element[4] of her *prima facie* case,

---

[4]    The magistrate held that Plaintiff was able to make a *prima facie* showing that her discharge occurred under circumstances that raised a reasonable inference of discrimination. Plaintiff

6

and that Plaintiff failed to show that Defendants' legitimate reason for termination was actually pretextual.

Plaintiff first objects to the magistrate's supposed discussion of the first element of her *prima facie* case. For the purposes of their Motion for Summary Judgment only, Defendants conceded that Plaintiff was able to establish the first two elements of a *prima facie* case of discrimination. [*See* Defs.' Mot., Doc. # 41-1, at 16 n.9.] However, Plaintiff claims that the magistrate nonetheless found Plaintiff failed to meet the first element of her *prima facie* case. Plaintiff's appear to misread the magistrate's R&R. The magistrate, before beginning her analysis of Plaintiff's ADA claim, simply stated her overarching conclusion that Plaintiff failed to establish her "regarded as" claim under the ADA. [R&R, Doc. # 54, at 9.] The magistrate then specifically held that "the court [would] consider only the remaining two elements" of Plaintiff's *prima facie* case.[*Id.*] Nonetheless, out of an abundance of caution, this Court modifies the R&R to specify that, for purposes of Defendants' Motion for Summary Judgment, the Court assumes that Plaintiff has established the first two elements of her *prima facie* case.

Plaintiff next objects to the magistrate's holding that Plaintiff failed to show she was performing her job at a level that met Defendants' legitimate expectations. [Obj., Doc. # 57, at 5–9.] Specifically, Plaintiff argues the magistrate erred by finding that Defendants legitimately expected Plaintiff to relocate closer to Florence, and that Plaintiff did not meet this expectation. The Court agrees.

As the Fourth Circuit has explained, even when "the evidence creates a close call . . ., we

---

does not object to this finding, nor do Defendants take issue with this finding in their Reply to Plaintiff's Objections. For the reasons discussed by the magistrate, the Court adopts this portion of the R&R.

7

must remember that 'the burden of establishing a *prima facie* case of disparate treatment is not onerous.'" *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (quoting *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The Court finds the evidence in the case creates a genuine dispute of fact as to whether, at the time of her discharge, Plaintiff was performing her job at a level that met her employer's legitimate expectations. This evidence includes the following:[5]

- (1) Mr. Reichenbach testified in his deposition that "[i]f the job was getting done, [Plaintiff] would not have to live in the Florence community." [Reichenbach Dep., Doc. # 48-9, at 169:22–23.]

- (2) While it appears undisputed that the parties discussed the possibility that Plaintiff might move closer to Florence, there was no written document stating that Plaintiff was required to move to Florence as a condition of her employment. [Ex. 6 to Carr Dep., Doc. # 48-6, at 92.] *See Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1195 (5th Cir. 1992) (holding that "when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer" both pretext and illegitimacy of the alleged unmet expectation).

- (3) Plaintiff's salary was increased approximately five months after she began working for Defendants, even though she had still not relocated to Florence. [*See* Carr Dep., Doc. # 41-2, 140:11–17; Reichenbach Dep., Doc. # 41-4, at 129:19–130:3.]

- (4) Plaintiff testified that around the time frame of her raise, Mr. Reichenbach praised her work and stated that she "had a job as long as [she] wanted one." [*See* Carr Dep., Doc. # 48-6, 115:13–14.] Further, it is undisputed that in January 2010, after Plaintiff's supposed failure to perform, Mr. Reichenbach wrote a letter of recommendation stating that Plaintiff "has proven herself to be one of the most dependable, reliable and hard working people I've ever met. . . . I'm thoroughly convinced that I could run my business with half of my current staff if they all worked like [Plaintiff] . . . she's that good." [Ltr., Doc. # 48-9 at 80.] *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999) (holding that summary

---

[5] In their Reply to Plaintiff's Objections, Defendants argue that the evidence in the record establishes that Defendants expected Plaintiff to move closer to Florence. However, Defendants do not dispute that this supposed requirement was never put in writing and that Plaintiff received a raise after not having moved within the first several months of her employment.

8

>    judgment was inappropriate on the issue of legitimate expectations where employee received raises prior to termination and received letter of recommendation after termination).
>
> (5) Although there is testimony that Plaintiff failed to process payroll and failed to pay off vehicles as required, there is no indication from the record that Plaintiff was ever written up or otherwise formally disciplined for these actions. [*See* Carr Dep., Doc. # 41-2, 118:3–119:18.] Moreover, Plaintiff's termination occurred months after these actions, Plaintiff received a raise after these actions, and Mr. Reichenbach's glowing letter of recommendation is evidence that he still found her dependable and reliable.

Thus, the Court denies Defendants' Motion for Summary Judgment on the ground that Plaintiff failed to prove her *prima facie* case.

In her final objection relating to pretext, Plaintiff take issue with the magistrate's finding that Defendants had a legitimate, non-discriminatory reason for Plaintiff's termination, and that Plaintiff failed to offer sufficient evidence that Defendants' reason was a pretext for discrimination. In determining that Defendants had a legitimate, non-discriminatory reason for Plaintiff's termination, the magistrate relied primarily on the evidence that Plaintiff was allegedly failing to meet Defendants' legitimate expectations. However, as discussed above, when viewing the evidence in a light most favorable to Plaintiff, Defendants have failed to produce a *legitimate*, non-discriminatory reason for Plaintiff's termination.

Further, even assuming Defendants had carried their burden to produce a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff has offered sufficient evidence to create a genuine dispute of fact as to whether Defendants' reason for her discharge was not true, but was instead a pretext for discrimination. As discussed above, there was no written document stating that Plaintiff was required to move to Florence as a condition of her employment; moreover, there is no documentation in the record that Plaintiff failed to meet any of Defendants' standards. There is, in

9

fact, a glowing letter of recommendation from Mr. Reichenbach praising Plaintiff's job performance. *See Lloyd*, 961 F.2d at 1195 (holding that and absence of documentation can be evidence of pretext). Moreover, Defendants notified Plaintiff of her termination the first working day[6] following her disclosure that her recent round of medical testing did not look good. [Reichenbach Dep., Doc. #41-4, at 164:5-24.] Close temporal proximity can serve as evidence of pretext. *See, e.g.*, *Warren v. Halstead Indus., Inc*., 802 F.2d 746, 758 (4th Cir. 1986) (noting that close temporal proximity combined with other relevant evidence can give rise to an inference of pretext); *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 746 (D.S.C. 2010) (holding that sufficiently close temporal proximity may give rise to an inference of pretext); *Blasic v. Chugach Support Servs., Inc*., 673 F. Supp. 2d 389, 400 (D. Md. 2009) (finding that an adverse employment action closely following protected activity is one of several factors which, when combined, may support an inference of pretext). For these reasons, the Court rejects and overrules the R&R on this issue, and finds a genuine dispute of fact exists regarding Plaintiff's pretext claim under the ADA.

### B.     Mixed Motive

Plaintiff also objects to the magistrate's finding that she was unable to pursue a "direct evidence" claim under the ADA. Specifically, Plaintiff seeks to proceed with her case under a mixed-motive theory. To pursue a mixed-motive case, a plaintiff must demonstrate that a protected trait "actually played a role in the employer's decision making process and had a determinative influence on the outcome." *Worden v. SunTrust Banks, Inc*. 549 F.3d 334, 342, n.7 (4th Cir. 2008)

---

[6]  In their Reply to Plaintiff's Objections, Defendants claim that Plaintiff's temporal proximity argument ignores that fact that Mr. Reichenbach's decision to terminate Plaintiff was made immediately after learning Plaintiff would be unable to relocate. Again, viewed in a light most favorable to Plaintiff, Mr. Reichenbach still made the decision to terminate Plaintiff on the first work day after hearing about her negative test results and after then asking Plaintiff about her relocation plans.

(internal citation omitted) (applying mixed-motive analysis in employment discrimination claim brought under the Employee Polygraph Protection Act, 29 U.S.C. §§ 2001-2009).

As the magistrate discussed more thoroughly in her R&R, in 2009 the U.S. Supreme Court, in dealing with the similar Age Discrimination in Employment Act of 1967 ("ADEA"), found that, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 174 (2009). Similarly, Congress did not amend the text of the ADA to include the "motivating factor" approach. Following the Supreme Court's decision in *Gross*, the Fourth Circuit has yet to revisit its ADA precedent from *Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). Other circuits, however, have concluded the mixed-motive standard of Title VII does not apply to ADA claims. *See Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 318 (6th Cir. 2012); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010). Thus, there appears to be a serious question as to whether Plaintiff may still seek to prove her ADA case through a mixed-motive theory.

However, the Court has found that Plaintiff survives summary judgment on her ADA claim on the basis of a *McDonnell Douglas* pretext analysis, which is one of the "two avenues of proof" through which an ADA plaintiff may "avert summary judgment." *Diamond*, 416 F.3d at 318 (quoting *Hill*, 354 F.3d at 284). The Court therefore need not address the legal question of whether a Plaintiff may prove an ADA claim through a mixed-motive theory for purposes of the pending Motion for Summary Judgment.[7] Therefore, for the reasons discussed herein, Defendants' Motion for Summary Judgment as to Plaintiff's ADA claim is denied.

---

[7] To the extent Plaintiff still seeks to pursue her questionable mixed-motive theory in light of *Gross* at trial, the Court reserves ruling on this legal issue until that time, if necessary.

11

**II.     FMLA**

"The FMLA creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Gleaton v. Monumental Life Ins. Co.*, 719 F. Supp. 2d 623, 633 n.3 (D.S.C. 2010) (internal citation omitted). Plaintiff objects to the magistrate's finding that Plaintiff failed to establish either an interference claim or a retaliation claim.

**A.     Interference Claim**

"To establish unlawful interference with an entitlement to FMLA benefits, an employee must show that: (1) he was an eligible employee, (2) his employer was covered by the Act, (3) he was entitled to leave under the FMLA, (4) he gave his employer adequate notice of his intention to take leave, and (5) the employer denied him FMLA benefits to which he was entitled." *King v. Blanchard Mach. Co.*, No. 3:10-3219-MBS, 2012 WL 4586177, at *5 (D.S.C. Sept. 28, 2012). To be eligible for leave under the FMLA, an employee must have been employed "for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A)(I).

The magistrate found that Plaintiff was not able to meet all the elements of an FMLA interference claim. "It is undisputed that Plaintiff had not worked for Defendants for 12 months at the time of her termination. Further the evidence in the record establishes that Plaintiff was not entitled to leave under the FMLA, that Plaintiff did not provide her employer with any notice of her intention to take FMLA leave, and that Defendants did not deny Plaintiff FMLA benefits to which she was entitled." [R&R, Doc. #54, at 22–23.]

First, Plaintiff concedes that she had not worked for Defendants for a year when she was

informed of her termination or when she actually left Defendants' employment. However, in objection Plaintiff cites to *Gleaton* for the proposition that "an employer's preemptive termination of an employee to prevent her from qualifying for federally protected leave constitutes prohibited interference or retaliation under the FMLA." [Obj., Doc. # 57, at 13 (citing *Gleaton*, 719 F. Supp. 2d at 626–28).] However, *Gleaton*, the primary case relied on by Plaintiff, involved a retaliation claim and not an interference claim. *Gleaton*, 719 F. Supp. 2d at 627. Moreover, *Gleaton* specifically noted that the Fourth Circuit, in addressing an interference claim, held that an FMLA interference is triggered by "the employee's one-year anniversary . . . ." *Id.* (citing *Babcock v. BellSouth Advertising and Publ'g Corp.*, 348 F.3d 73, 77–78 (4th Cir. 2003)). Further, Plaintiff has presented no evidence that Defendants terminated Plaintiff to prevent her from qualifying from FMLA. In fact, Plaintiff was allowed to stay employed until, with her assistance, a replacement was hired and trained. [Carr Dep., Doc. # 41-2, at 152:7–13.] Plaintiff's objection is without merit.

Second, Plaintiff claims she was not required "to make a specific request for leave before she [could] legally invoke the" FMLA. [Obj., Doc. # 57, at 14.] Plaintiff invokes 29 C.F.R. § 825.302(b)[8] for the proposition that a party "need not expressly assert rights under the FMLA or even mention the FMLA" to qualify for an initial leave. [*Id.* at 12.] However, the provision invoked by Plaintiff does not have this exact language, and instead states as follows:

> When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day. In all cases, however, the determination of when an employee could practicably provide notice must take into account the individual facts and circumstances.

---

[8] Plaintiff cited 29 C.F.R. § 825.203(b). However, this section of the Code of Federal Regulations contains no subsection (b) and is not applicable to the issue. It appears that Plaintiff intended to cite 29 C.F.R. § 825.302(b), which deals with foreseeable FMLA leave.

13

29 C.F.R. § 825.302(b). This provision still requires some type of notice to the employer of an intent to take leave, which was never provided in this case. In fact, Plaintiff never requested any form of leave from Defendants, did not obtain an actual diagnosis of her condition until well after Defendants told her she would be terminated, and testified that she would have only missed two days of work had she been employed. [Carr Dep., Doc. # 41-2, at 152:7–13.] This objection is overruled, and Defendants are entitled to summary judgment on Plaintiff's FMLA interference claim.

### B.     Retaliation Claim

To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must show: (1) she made use of a protected right under the FMLA, (2) she was adversely affected by an employment decision, and (3) that there is a causal connection between Plaintiff's protected activity and the employer's adverse employment action. *See, e.g.*, *Perry v. Computer Sci. Corp.*, 429 F. App'x 218, 220 (4th Cir. 2011). Plaintiff objects to the magistrate's finding that her "retaliation claim fail[ed] as a matter of law because she never engaged in any protected activity in that she never requested FMLA leave, never took FMLA leave, and never did anything else that would be protected by the FMLA." [R&R, Doc. # 54, at 23.]

Without citing any authority, Plaintiff claims that "[o]n the evidence in the record, a reasonable jury could conclude that, at the time Mr. Reichenbach informed Plaintiff of her impending termination, it was all but certain that she had a serious health condition and would need to take leave if she continued working for his dealership." [Obj., Doc. # 57, at 14.] However, as more thoroughly discussed above, Plaintiff never made use of a protected right under the FMLA. Plaintiff never requested any form of leave from Defendants, was never denied any form of leave from Defendants, did not obtain a diagnosis until well after she was informed of her termination, and

testified she would have only needed two days off had she been employed. Plaintiff's objection is without merit and this Court adopts the magistrate's finding that Defendants are entitled to summary judgment on Plaintiff's FMLA retaliation claim.

## Conclusion

The Court has thoroughly analyzed the entire record, including the R&R, objections to the R&R, reply to the objections, and the applicable law. The Court has further conducted the required review of all of the objections and rejects the R&R in part, and adopts the R&R in part as modified herein. Specifically, the Court rejects and overrules the magistrate's R&R as to Plaintiff's ADA claim, and adopts the magistrate's R&R as to Plaintiff's FMLA claims as modified herein.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 41] is **GRANTED in part** and **DENIED in part** as follows:

1. Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's interference and retaliation claims under the FMLA, and those claims are **DISMISSED**; and

2. Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's ADA claim.

It is unclear whether the parties have mediated this case. Therefore, **IT IS FURTHER ORDERED** that the Court *sua sponte* amends the scheduling order in this case as follows, and in an effort to give the parties an opportunity to mediate this case as to Plaintiff's remaining ADA claim:

1. Motions in limine must be filed by **May 9, 2013**, and responses to those motions must be filed by **May 16, 2013**.

2. Attorneys shall meet no later than **May 16, 2013,** for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07.

2. Parties shall furnish the Court pretrial briefs by **May 23, 2013**.

     3.     This case is subject to being called for jury selection and trial on or after **May 30, 2013**.

**IT IS SO ORDERED.**

                                                     s/ R. Bryan Harwell
                                                     R. Bryan Harwell
                                                     United States District Judge

Florence, South Carolina
March 26, 2013